# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

**SOUTHERN FIDELITY INSURANCE COMPANY**          **CIVIL ACTION**

**VERSUS**          **NO. 13-0496**

**JACQUELIN MARTIN**          **SECTION: "G"(2)**


## ORDER AND REASONS

This litigation arises out of Defendant Jacquelin Martin's ("Martin") claim for insurance proceeds pursuant to her homeowners insurance policy with Plaintiff Southern Fidelity Insurance Company ("SFIC"). On March 15, 2013, SFIC filed a complaint seeking declaratory judgment that: (1) "both Martin and SFIC fully and completely participate in the Appraisal Process" specified in the insurance policy; (2) "the Appraisal Process . . . requires a selection of an Umpire"; and (3) this Court appoint "a competent and disinterested Umpire."[1] On May 22, 2013, Martin answered the complaint and filed a counterclaim, wherein she seeks damages for SFIC's "breech [sic] of its statutory duty of good faith and fair dealing under Louisiana R.S. 22:658, and Louisiana R.S. 22:1220 of the Louisiana Insurance Code" for SFIC's alleged "failure to tender a reasonable sum to adequately compensate" Martin in connection with her insurance claim.[2]

Before the Court is SFIC's motion for summary judgment,[3] seeking the dismissal of Martin's counterclaim against it. SFIC contends that summary judgment should be entered against Martin because Martin failed to comply with the terms of her SFIC homeowners insurance policy requiring her to cooperate in the investigation of her claim, specifically by refusing to provide an examination

---

[1] Rec. Doc. 1 at ¶¶ 15-17.

[2] Rec. Doc. 12 at p. 6. The Court notes that Martin has cited provisions of the Louisiana Code that have since been renumbered. *See* Louisiana R.S. §§ 22:1892 and 22:1973.

[3] Rec. Doc. 22-1.

under oath ("EUO"), and so, as a matter of law, her claim should be dismissed. After considering

the pending motion, the memorandum in support, the opposition, the reply, the record, and the

applicable law, the Court will deny the motion.

## I. Background

### A. Factual Background

This case concerns an insurance dispute over the damage caused by Hurricane Isaac to

Defendant's home in New Orleans, Louisiana. On or about August 28, 2012, Martin's home was

damaged when the hurricane passed through the New Orleans area.[4] The home was covered by a

homeowners insurance policy issued by SFIC.[5] The policy contained a "Duties After Loss" section,

which included a requirement that the insured submit to an examination under oath as well as a

general cooperation clause.[6]

As a result of the hurricane damage, Martin filed an insurance claim with SFIC.[7] The chain

of communication between Martin and SFIC regarding Martin's claim is disputed by the parties.

According to Martin, on August 29 or August 30, 2012, Martin called her insurance agent

and SFIC's claims department to report the hurricane damage.[8] On September 2, an adjuster

inspected Martin's house,[9] and on September 5, Martin received a letter from the adjuster estimating

---

[4] Rec. Doc. 1 at ¶ 8.

[5] *Id.* at ¶ 7.

[6] Homeowners Policy issued by SFIC to Jacquelin Martin, Policy No. LVH 100221070017, Rec. Doc. 22-3 at p. 29.

[7] Rec. Doc. 1 at ¶ 9.

[8] Rec. Doc. 24-1 at p. 3

[9] *Id.*

that repairs would cost $33,094.66.[10] Five days later on September 10, Martin states that she received a payment from SFIC in the amount of $9,147.72 for damage to the house, $11,234.24 for damage to personal property, and $692.60 for damage to other structures on the land,[11] for a total of $21,074.52. According to Martin, she also received an additional check for $19,200.00 for loss of use at a later date.[12]

It is unclear from the record what, if any, communication between the parties occurred between mid-September 2012 and late-February 2013.  But, according to Martin, at various dates after September 10, SFIC sent "several other persons," including at least two adjusters, to inspect the damage to Martin's home.[13]

On February 26, 2013, SFIC mailed Martin a "Reservation of Rights" letter.[14] In the letter, SFIC claimed that it had assigned an engineer to inspect Martin's property but that the engineer had not been able to conduct the inspection: "The engineer was not allowed to complete his inspection when first scheduled. The engineer has since set two follow-up dates and has now been told by your contractor, that he is no longer allowed to inspect the property."[15]

On March 14, 2013, one of SFIC's attorneys, Matthew Monson ("Monson") at the Monson Law Firm, mailed Martin a letter requesting that she take part in an examination under oath on

---

[10] Letter from Nicholas Miller, Trinity Insurance Services, to Jacquelin Martin (Sept. 3, 2012), Rec. Doc. 24-5 at p. 8.

[11] Rec. Doc. 24-1 at p. 4.

[12] *Id.*

[13] *Id.*

[14] Letter from Wade Hargrove, SFIC, to Jacquelin Martin (Feb. 26, 2013), Rec. Doc. 22-3 at pp. 78-79.

[15] *Id.*

Monday, April 8, 2013 at 10:00 a.m. in downtown New Orleans.[16] The letter also requested that Martin bring eighteen categories of documents to the examination.[17]

Martin contends that she called the Monson Law Firm on April 5, 2012 and explained to attorney Donald Latuso ("Latuso") that she could not make the scheduled examination "because she usually watches her granddaughter during the workday."[18] On April 11, Martin mailed a letter to SFIC stating that she would submit to an examination under oath ("EUO") "in the presence of my lawyer and in his office" and that she would notify SFIC of her representation.[19] According to Martin, four days later, on April 15, she called Latuso again and informed him that "I did not understand what a statement under oath is and that I wanted to obtain a lawyer."[20] Martin asserts that Latuso told her "that this was fine . . . or words to this effect."[21]

On April 16, Monson mailed Martin a letter stating "[t]his will confirm your telephone conversation of yesterday, April 15, 2013, with our office in which you have stated to this office that you will not be participating in the examination under oath."[22] On April 23, 2013, Monson sent

---

[16] Letter from Matthew D. Monson, The Monson Law Firm, LLC, to Jacquelin Martin (Mar. 14, 2013), Rec. Doc. 22-3 at pp. 70-73.

[17] *Id.* at pp. 71-72.

[18] Rec. Doc. 24-1  at p. 5.

[19] Letter from Jacquelin Martin to Southern Fidelity Insurance (Apr. 11, 2013), Rec. Doc. 24-4 at p. 1.

[20] Aff. of Jacquelin Martin (Aug. 5, 2013), Rec. Doc. 24-3 at p. 2.

[21] *Id.*

[22] Letter from Matthew D. Monson, The Monson Law Firm, LLC, to Jacquelin Martin (Apr. 16, 2013), Rec. Doc. 22-3 at p. 75.

Martin another letter, again stating that Martin had informed SFIC's attorneys that she would not participate in an EUO.[23]

### B. Procedural Background

On March 15, 2013, SFIC filed a complaint seeking declaratory judgment that: (1) "both Martin and SFIC fully and completely participate in the Appraisal Process" specified in the insurance policy; (2) "the Appraisal Process . . . requires a selection of an Umpire"; and (3) this Court appoint "a competent and disinterested Umpire."[24] On May 22, 2013, Martin answered the complaint and filed a counterclaim, wherein she seeks damages for SFIC's "breech [sic] of its statutory duty of good faith and fair dealing under Louisiana R.S. 22:658, and Louisiana R.S. 22:1220 of the Louisiana Insurance Code" for SFIC's alleged "failure to tender a reasonable sum to adequately compensate" Martin in connection with her insurance claim.[25] SFIC filed its answer to Martin's counterclaim on June 12, 2013.[26] On July 17, 2013, SFIC filed the pending motion for summary judgment, seeking dismissal of Martin's counterclaim.[27] On August 6, 2013, Martin filed an opposition to the motion for summary judgment.[28] With leave of the Court, SFIC filed a reply on August 13, 2013.[29]

---

[23] Letter from Matthew D. Monson, The Monson Law Firm, LLC, to Jacquelin Martin (Apr. 25, 2013), Rec. Doc. 22-3 at pp. 76-77.

[24] Rec. Doc. 1 at ¶¶ 15-17.

[25] Rec. Doc. 12 at p. 6. The Court notes that Martin has cited provisions of the Louisiana Code that have since been renumbered. *See* Louisiana R.S. §§ 22:1892 and 22:1973.

[26] Rec. Doc. 15.

[27] Rec. Doc. 22-1.

[28] Rec. Doc. 24-1.

[29] Rec. Doc. 29.

## II. Parties' Arguments

### A. Plaintiff SFIC's Arguments in Support

In support of the pending motion, SFIC argues that Martin's counterclaim should be dismissed due to Martin's "failure to comply with a condition precedent to coverage."[30] Specifically, SFIC asserts that Martin failed to comply "by refusing to appear for an examination under oath ('EUO'), provide the requested documentation and by refusing to allow the expert retained by SFIC to complete his evaluation of the property."[31] According to SFIC, "[t]he plain language of the Policy requires Martin to comply with all policy provisions before filing suit."[32]

SFIC maintains that under Louisiana law, it has the right to enforce the conditions of its policies, including the requirement that Martin submit to an EUO. Citing to the Louisiana Supreme Court in *Oceanonics, Inc. v. Petroleum Distributing Co.*,[33] SFIC contends that "in the absence of conflict with statutes or policy, insurers have the same rights as individuals to limit their liability and to enforce whatever conditions they please upon their obligation."[34] Furthermore, SFIC argues that a Louisiana statute mandates certain conditions in homeowners policies, including requirements that the policyholder permit the insurer to inspect the property and that the policyholder submit to examinations under oath.[35]

---

[30]  Rec. Doc. 22-1 at p. 1.

[31]  *Id.*

[32]  *Id.*

[33]  292 So. 2d 190 (La. 1974).

[34]  Rec. Doc. 22-1 at p. 8 (citing *Oceanonics*, 292 So. 2d at 192).

[35]  *Id.* (citing Louisiana R.S. § 22:1311). The Court notes that Louisiana R.S. § 22:1311 applies to fire insurance policies, not homeowners insurance policies. Homeowners insurance policies are addressed at Louisiana R.S. §§ 22:1331-38.

Focusing on the EUO requirement contained in Martin's policy, SFIC maintains that "it is necessary that the insurer have some means of cross-examining upon the written statement and proofs of the insured for the purpose of getting at the exact facts before paying the sum claimed of it."[36] SFIC characterizes the EUO as "an efficient device for expediting the evaluation, settlement or adjustment of valid claims, and for detecting and discouraging improper or exaggerated claims."[37] It further states that the EUO and other duties to cooperate imposed upon the insured "are intended in part to avoid litigation by permitting the insurer to fully and fairly evaluate the claim."

SFIC contends because Martin refused to submit to an EUO, she should not be allowed to bring suit to recover on her policy.[38] According to SFIC, "virtually every court that has discussed this issue has come to the conclusion that the failure to give the examination under oath, when requested, is a bar to claim."[39] Specifically, SFIC points to *Lee v. United Fire & Casualty Co.*, a Louisiana appellate court case.[40] According to the SFIC, the court in *Lee* held that "the insured's repeated failure to provide information that was requested by the insurer violated the cooperation clause of their policy and justified dismissal of their claim with prejudice."[41] SFIC also discusses the Fifth Circuit's decision in *Mosadegh v. State Farm Fire and Casualty Co.,*[42] contending that "[t]he Court noted because Louisiana law teaches the failure to fulfill policy requirements that are conditions

---

[36] Rec. Doc. 22-1 at p. 9.

[37] *Id.*

[38] *Id.* at pp. 11, 13.

[39] *Id.* at p. 13; *see also id.* at 13-16 (collecting cases).

[40] *Id.* at p. 12 (citing *Lee v. United Fire & Cas. Co.*, 607 So. 2d 685 (La. Ct. App. 1992)).

[41] *Id.*

[42] 330 F. App'x 65 (5th Cir. 2009) (per curiam).

precedent to an insurance policy precludes suit under the policy, [plaintiff's] failure served as a basis on which to grant the motion for summary judgment."[43]

Preemptively addressing a potential counterargument by Martin, SFIC anticipates that "[t]his motion will no doubt be met with a response by Martin that with the filing of the lawsuit, SFIC has the opportunity to take her deposition" and that "[s]he will likely further suggest that somehow cures any failures on her part for breaking the contract of insurance."[44] SFIC, however, avers that "the right to take a deposition does not cure the failure to give an examination under oath."[45] To support its position, SFIC discusses *Goldman v. State Farm Fire General Ins. Co.*,[46] a Florida appellate court decision. According to SFIC, the Florida state court was "not persuaded that a deposition after suit obviates any prejudice for the carrier" stemming from the insured's initial refusal to submit to an EUO.[47] SFIC notes that the Florida court reasoned that "the obligation for an examination under oath is contractual rather than arising out of the rules of civil procedure."[48]

After addressing this potential counterargument, SFIC raises the issue of whether it must prove that it was prejudiced by Martin's alleged refusal to submit to an EUO. SFIC begins its discussion by noting a lack of Louisiana case law directly on point:

> Undersigned counsel has located no Louisiana Supreme Court case that has ever discussed EUOs, which could serve as a critical foundation for this Court's decision as a Federal Court applying Louisiana law. Furthermore, as a second tier approach, SFIC suggests that it has

---

[43] Rec. Doc. 22-1 at p. 17.

[44] *Id.* at pp. 17-18.

[45] *Id.*

[46] 660 So. 2d 300 (Fla. Dist. Ct. App. 1995).

[47] Rec. Doc. 22-1 at p. 18.

[48] *Id.*

located no Louisiana appellate court case that discusses the fundamental question of whether "prejudice" must be shown to bar a claim/suit for failing to fulfill the terms and conditions of the contract of insurance and its requirement for an examination under oath.[49]

SFIC does, however, point to two cases from Louisiana's intermediate appellate courts where the courts denied insurance claims for failure to submit to an EUO:

> In *Lee v. United Fire and Casualty Company*, the Court dismissed the case with prejudice for failing to give an EUO and commented that the outright refusal to submit to an examination "is the easy case." The Louisiana Second Circuit Court of Appeals came to a similar conclusion in *Brantley v. State Farm Insurance Company*, where the Court dismissed the case for failing to comply with the policy coverage provisions by failing to cooperate in the investigation by giving an EUO and producing documents. There is no discussion in *Lee* or *Brantley* of a requirement of proof of prejudice.[50]

SFIC also looks to Louisiana statutes, arguing that "a focus of Louisiana codified law further suggests that to impose a requirement of proof of 'prejudice' by SFIC, would be to impose a requirement that the Louisiana Legislature has not seen fit to impose."[51] Noting that "[t]here are many codified provisions in Louisiana law that require proof of prejudice," SFIC contends that "[t]o the contrary, Louisiana Insurance Code is void of any legislated requirement of proof of prejudice in a setting as has been presented to this Court."[52]

For additional guidance on the issue of prejudice, SFIC revisits the Fifth Circuit's opinion in *Mosadegh*. According to SFIC, the Fifth Circuit "held that it need not pause on the Louisiana law question because in that case prejudice was demonstrated."[53]

---

[49] *Id.* at p. 20.

[50] *Id.* at p. 20 (citing *Brantley v. State Farm Ins. Co.*, 37,601 (La. App. 2 Cir. 1/28/04); 865 So. 2d 265; *Lee*, 607 S.2d at 685).

[51] *Id.* at p. 21.

[52] *Id.*

[53] *Id.* at p. 22 (citing *Mosadegh*, 330 F. App'x at 65).

Going outside Louisiana law, SFIC asserts that courts in other jurisdictions view a refusal to submit to an EUO as per se prejudicial:

> Courts in other jurisdictions have explained that, even where prejudice is required as to certain failures by the insured to cooperate, an EUO is so integral to an insurer's ability to gather relevant information that failure to submit to an EUO is sufficient prejudice in and of itself to void coverage.[54]

SFIC next contends that "the issue before this Honorable Court has been recently determined in the Fifth Circuit case of *Kerr v. State Farm Fire & Casualty Co.*"[55] According to SFIC, the Fifth Circuit, applying Louisiana law, held that "plaintiff's failure to submit to an EUO and provide requested documents constituted a material breach of the insurance policy, precluding plaintiff from recovering in a suit under the policy."[56]

SFIC finally contends that even if this Court holds that SFIC must show that it was prejudiced by Martin's alleged refusal to submit to an EUO, prejudice does exist in this case. Quoting the Affidavit of Anthony Hargrove, a claims adjuster at SFIC, SFIC contends that "[a]s a result of the refusal and delays caused by Martin's conduct, SFIC can no longer 'obtain relevant information concerning the loss while the information is fresh.'"[57] SFIC further avers that because of Martin's conduct "SFIC will no longer have the opportunity to inspect the Property on a timely basis."[58]

---

[54] *Id.* at p. 24. In particular, SFIC cites Massachusetts and California case law. *See id.* at pp. 24-25 (citing *Hanover Ins. Co. v. Cape Cod Custom Home Theater, Inc.*, 891 N.E. 2d 703 (Mass. App. Ct. 2008); *Brizuela v. Calfarm Ins. Co.*, 10 Cal. Rptr. 661 (Cal. Dist. Ct. App. 2004)).

[55] *Id* at p. 29 (citing *Kerr v. State Farm Fire & Cas. Co.*, 511 F. App'x 306 (5th Cir. 2013) (per curiam)).

[56] *Id.* at p. 29.

[57] *Id.* at p. 30 (quoting Aff. of Anthony Hargrove (July 16, 2013), Rec. Doc. 22-3 at pp. 1-3).

[58] *Id.*

### B. Defendant Martin's Arguments in Opposition

In opposition to the pending motion, Martin contends that "[t]here are genuine issues of material fact in this fact-intensive case that preclude Judgment as a matter of law."[59] Furthermore, Martin challenges the validity of SFIC's evidence, characterizing it as "hearsay and double hearsay."[60]

Addressing whether she ever refused to submit to an EUO and provide SFIC with requested documents, Martin maintains that SFIC's allegations rely exclusively on hearsay:

> Plaintiff's sole Affiant (Mr. Hargrove, Plaintiff's employee) attaches four letters to his Affidavit. Plaintiff's attorneys (who are not Plaintiff's employees) wrote those letters. Plaintiff offers them, not to show that the letters were written, but to prove the truth of the matters asserted in the letters' contents. Three of those letters are Plaintiffs' [sic] only offered proof that Defendant refuses to submit to an Examination Under Oath.[61]

Martin avers that rather than relying on SFIC's alleged hearsay, this Court should look to the statements contained in her affidavit, which are based on "personal knowledge of conversations in which she participated."[62] Pointing to her affidavit, Martin contends that:

> [S]he has always been ready to give her Examination; Mr. Latuso agreed to continue the date that he set without consulting Defendant in advance; Defendant requested that the re-scheduled Examination take place at her attorney's office with her attorney present; and Defendant never told Mr. Latuso or anyone else that she would not submit to an Examination Under Oath.[63]

---

[59] Rec. Doc. 24-1 at p. 2.

[60] *Id.*

[61] *Id.* at p. 8 (internal citations omitted) (emphasis omitted).

[62] *Id.* at p. 10.

[63] *Id.* (internal citations omitted) (citing Aff. of Jacquelin Martin (Aug. 5, 2013), Rec. Doc. 24-3).

Turning to SFIC's argument that Martin refused to allow an engineer to inspect the damage to her property, Martin asserts that "Plaintiff's sole evidence is inadmissible hearsay."[64] Martin argues that SFIC never identifies the engineer who was allegedly refused access to her property.[65] Again, Martin contrasts SFIC's alleged hearsay evidence with statements contained in her own affidavit: "I have allowed at least three (3) separate inspectors from Southern Fidelity Insurance Company to inspect my home as well as an engineer of Southern Fidelity Insurance Company."[66]

Regarding SFIC's contention that it does not have to prove prejudice, Martin first argues that Louisiana courts have not adopted the out-of-state case law cited in SFIC's brief.[67] Furthermore, Martin avers that the insurance policy at issue specifically requires that SFIC demonstrate prejudice.[68] Martin points to the language of the "Duties After Loss" section of the policy:

> In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. All insureds and their representatives must see that the following are done: . . .[69]

According to Martin, "[t]he clear, explicit, general, ordinary, plain and popular meaning of the words used in this insurance contract require that a refusal to submit to an Examination Under Oath be proven prejudicial to Plaintiff for it to be grounds for a denial of coverage."[70]

Having argued that SFIC must show prejudice, Martin further maintains that there is a

---

[64] *Id.*

[65] *Id.*

[66] *Id.* at p. 11.

[67] *Id.* at p. 12.

[68] *Id.*

[69] *Id.* (citing Homeowners Policy issued by SFIC to Jacquelin Martin, Policy No. LVH 100221070017, Rec. Doc. 22-3 at p. 29) (emphasis omitted).

[70] *Id.* at p. 13.

disputed issue of material fact as to whether the alleged refusal to submit to an EUO was in fact prejudicial.[71] According to Martin, the existence of prejudice is "usually a fact-intensive inquiry unsuitable for summary judgment."[72] Martin contends that SFIC's argument that it was prejudiced by the lack of timely cooperation from Martin is undermined by the fact that "it [SFIC] waited from September until April to set Martin's Examination Under Oath and have her bring documentation at that time."[73]

Finally, Martin asserts that SFIC's reliance on *Lee v. United Fire & Casualty Co.* is misplaced. Martin contends that no other Louisiana case has cited the *Lee* opinion, and avers that this Court should not use *Lee* to "make an *Erie* guess that the Louisiana Supreme Court would apply *Lee* to the facts in this case."[74] Furthermore, Martin distinguishes the case at hand from *Lee*, arguing that "there is no refusal to submit to an examination here as there was in *Lee*," and that "unlike in *Lee*, here the policy requires that a refusal be 'prejudice to us,' meaning prejudicial to Plaintiff [SFIC]."[75]

### C. Plaintiff SFIC's Reply

In reply, SFIC reiterates its argument that Martin should be barred from pursuing her counterclaim because she did not comply with her duties under the policy.[76] SFIC maintains that "it

---

[71] *Id.* at p. 15.

[72] *Id.*

[73] *Id.*

[74] *Id.* at p. 14.

[75] *Id.* (citing Homeowners Policy issued by SFIC to Jacquelin Martin, Policy No. LVH 100221070017, Rec. Doc. 22-3 at p. 29).

[76] Rec. Doc. 29 at p. 2.

is undisputed that none of the Policy-required conditions, the EUO, appraisal or reinspection, have occurred at this time,"[77] and it further contends that "SFIC has been prejudiced in its multiple attempts to adjust Martin's claim."[78] SFIC concludes that its motion for summary judgment should be granted and that Martin's counterclaim should be dismissed with prejudice.[79] Alternatively, in the event that this Court denies SFIC's motion for summary judgment, SFIC contends that this Court should dismiss Martin's counterclaim without prejudice "for her failure to comply with conditions present in the SFIC Policy."[80]

Turning to Martin's contention that SFIC's motion for summary judgment presents arguments premised on improper hearsay evidence, SFIC asserts that the affidavit of claims adjuster Anthony Hargrove is "admissible hearsay pursuant to the business records exception."[81] SFIC further maintains that the letters from the Monson Law Firm as well as the Reservation of Rights letter are also admissible as business records.[82] Citing *United States v. Duncan*,[83] SFIC contends that "[t]here is no requirement that the witness who lays the foundation be the author of the record or be able to personally attest to its accuracy."[84]

---

[77] *Id.*

[78] *Id.*

[79] *Id.*

[80] *Id.*

[81] *Id.* at p. 3.

[82] *Id.* at p. 3.

[83] 919 F.2d 981, 986 (5th Cir. 1990).

[84] Rec. Doc. 29 at p. 4.

### III. Standard on a Motion for Summary Judgment

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[85] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[86] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[87] If the record, as a whole, could not lead a rational trier of fact to find for the non-moving party, then no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law.[88]

The party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record, which it believes demonstrate the absence of a genuine issue of material fact.[89] If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[90] The nonmoving party can then defeat the motion for summary judgment by either countering with sufficient evidence of its own or "showing that the moving party's

---

[85] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[86] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).

[87] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[88] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

[89] *Celotex*, 477 U.S. at 323.

[90] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991).

evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor

of the moving party."[91] The nonmoving party may not rest upon the pleadings, but must identify

specific facts in the record and articulate the precise manner in which that evidence establishes a

genuine issue for trial.[92]

## IV. Law and Analysis

### A. Applicable Law

This Court's subject matter jurisdiction was invoked pursuant to 28 U.S.C. § 1332, which

provides original jurisdiction over civil actions between citizens of different states where the matter

in controversy exceeds $75,000. As a federal court exercising diversity jurisdiction, it is "axiomatic"

that this Court must apply Louisiana law to resolve matters of substantive law presented in the

pending motion and "attempt to discern how Louisiana's highest court would resolve the issues at

hand."[93] Although that doctrine is equally applicable when a federal court is "[a]ddressing an

unsettled area of Louisiana law," federal courts should "avoid creating new rights and remedies in

Louisiana state law where [the court] lack[s] express statutory authority or clear directive from the

Louisiana Supreme Court."[94]

### 1. Duty to Cooperate Under the Insurance Policy

This dispute arises out of an insurance policy between SFIC and Martin. Under Louisiana

law, "a policy of insurance is a contract between the parties and as between them constitutes the law

---

[91] *Id.* at 1265.

[92] *See, e.g.*, *Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[93] *In re Whitaker Const. Co. Inc.*, 411 F.3d 209, 209 n.4 (5th Cir. 2005) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)). The parties do not dispute that the insurance policy is governed by Louisiana law.

[94] *Id.*

16

of the case governed by the rules of interpretation for such agreements."[95] The provision at issue

here, entitled "B. Dutites After Loss," states:

> In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. All insureds and their representatives must see that the following are done:
>
> . . .
>
> 5.      Cooperate with us in the investigation of a claim;
>
> . . .
>
> 7.      As often as we reasonably require:
>      a.      Show the damaged property;
>      b.      Provide us with records and documents we request and permit us to make copies; and
>      c.      Submit to an examination under oath, while not in the presence of another "insured", and sign the same.[96]

In *LeBlanc v. Davis*, the Louisiana Supreme Court explained that the purpose of such provisions is

"to assure the [insurance] company of adequate information in order to evaluate the extent of the

injury and the amount of the damages which might be involved in order to fulfill its obligations

under the contract."[97] The *LeBlanc* Court characterized these obligations on the part of the insured

as "a condition precedent to his right of recovery."[98] Accordingly, courts have upheld these

---

[95] *LeBlanc v. Davis*, 223 So. 2d 862, 863 (La. 1969); *see also Crabtree v. State Farm Ins. Co.*, 93-C-0509 (La. 2/28/94); 632 So. 2d 736, 741 ("An insurance policy is a contract between the parties and should be construed using the general rules of interpretation set forth in the Civil Code.").

[96] Homeowners Policy issued by SFIC to Jacquelin Martin, Policy No. LVH 100221070017, Rec. Doc. 22-3 at p. 29.

[97] *LeBlanc*, 223 So. 2d at 864.

[98] *Id.*

provisions and have found that an insured is obligated to cooperate in the insurer's investigation of the claim.[99]

### 2. Breach of a Cooperation Clause and Prejudice to the Insurer

In *Lee v. United Fire & Casualty Co.*, the Louisiana Fourth Circuit Court of Appeal noted that "[c]ourts have generally reviewed compliance with insurance policy provisions as a condition precedent to recovery," and therefore "the failure of an insured to cooperate with the insurer has been held to be a material breach of the contract and a defense to a suit on the policy."[100] The court elaborated that this is the case regardless of whether "the failure to cooperate is manifested by a refusal to submit to an examination under oath or a refusal to produce documents."[101] In *Williams v. Lowe*,[102] the Louisiana Fifth Circuit Court of Appeal explained that "[f]or coverage to be excluded for an insured's violation of an insurance policy's cooperation clause, the breach on the part of the insured must be both material and prejudicial to the insurer."[103] Louisiana courts have not permitted an insurer to escape liability when the noncompliance with a cooperation clause has been minor,[104]

---

[99] *See, e.g.*, *Hamilton v. State Farm Fire and Cas.* Co., No. 11-00024, 2011 WL 5078963, at *2 (E.D. La. Oct. 24, 2011) (Lemelle, J.) ("This Court has recognized that 'the failure of an insured to cooperate with the insurer has been held to be a material breach of the contract and a defense to suit on the policy.'") (quoting *Mosadegh v. State Farm Fire and Casualty Co.*, No. 07-4427, 2008 WL 4544361, at *3 (E.D. La. Oct. 8, 2008) (Feldman, J.)); *Assaf v. Allstate Indemnity Co.*, No. 10-1063, 2011 WL 3178551, at *6 (E.D. La. July 27, 2011) (Engelhardt, J.); *Jackson v. State Farm Fire & Cas. Co.*, No. 06-7207, 2010 WL 724108, at *8 (E.D. La. Feb. 22, 2010) (Vance, C.J.) ("State Farm is correct in its assertion that, in specific circumstances, an insured's failure to comply with its policy's cooperation clause may preclude the insurer's liability.").

[100] 607 So. 2d at 688.

[101] *Id.* (internal citations omitted).

[102] 02-355 (La. App. 5 Cir. 10/16/02); 831 So. 2d 334.

[103] *Id.* at 336; *see also Desadier v. Safeway Ins. Co.*, 97-1412 (La. App. 3 Cir. 4/8/98); 712 So. 2d 925, 928 (explaining that the breach "must be material and prejudicial to the insurer"); *Freyou v. Marquette Cas. Co.*, 149 So. 2d 697, 699-700 (La. Ct. App. 1963) (noting that "a breach of the cooperation clause must be both material and prejudicial").

[104] *See Lee*, 607 So. 2d at 685 (describing how barring an insured from recovering insurance proceeds due to noncooperation is "a draconian remedy which we do not ordinarily favor").

but rather have found that the failure to cooperate precludes recovery when the insured engages in a "protracted, willful, and apparently bad faith refusal" to comply with a cooperation clause.[105]

The Louisiana Supreme Court has not yet decided whether prejudice to the insurer must be demonstrated, or whether the breach of a cooperation clause, under specific circumstances such as the refusal to submit to an EUO, can be considered prejudicial as a matter of law. However, in *Trosclair v. CNA Insurance*, the Louisiana Fourth Circuit Court of Appeal stated that "in a motion for summary judgment where coverage is denied because of . . . refusal to cooperate, the central question is whether there is prejudice to the insurer."[106] The court further elaborated that "[t]he burden is on the insurer to show actual prejudice,"[107] and that the "conduct of the insured, following the accident, is relevant and material to the issue of cooperation, material prejudice, and credibility as to liability and damages."[108]

The United States Court of Appeals for the Fifth Circuit seems to have reached a similar conclusion in *Mosdegh v. State Farm Fire & Casualty Co.*,[109] an unpublished opinion affirming the district court's grant of summary judgment in favor of the insurer. The Fifth Circuit relied on the district court's finding that "State Farm showed that it had been prejudiced by the failure of the plaintiffs to submit to examinations under oath."[110] The Fifth Circuit acknowledged the reasoning articulated in *Lee* that the failure to fulfill policy requirements that are conditions precedent to an

---

[105] *Id.* at 687; *see also Brantley v. State Farm Ins. Co.*, 37,601 (La. App. 2 Cir. 1/28/04); 865 So. 2d. 265, 271 (discussing evidence of an extended pattern of noncompliance by insureds).

[106] 637 So. 2d 1168, 1170 (La. Ct. App. 1994).

[107] *Id.*

[108] *Id.* at 1171.

[109] 330 F. App'x at 65.

[110] *Id.*

insurance policy precludes suit under the policy, but the Fifth Circuit explicitly noted that State Farm had "certainly demonstrated prejudice to its investigation and adjustment capacity through the [plaintiffs'] unwillingness to submit to the required examinations."[111] Therefore, the Fifth Circuit did not find it necessary to address the "Louisiana law question" that State Farm "need not even show prejudice" when a plaintiff refuses to submit to an EUO, because the district court found that the insured had indeed demonstrated prejudice.[112]

### 3. Admissibility of Alleged Hearsay Evidence

Rule 56(c)(2) of the Federal Rules of Civil Procedure, which governs summary judgement proceedings, provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."[113] Furthermore, Rule 56 requires that any affidavit or declaration used to support or oppose a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."[114]

Explaining Rule 56, the Fifth Circuit has instructed that the evidence proffered by the moving party to satisfy its burden must be "competent and admissible at trial."[115] However, the district court has the discretion to consider unobjected-to hearsay "for such probative value as it may

---

[111] *Id.*

[112] *Id.*

[113] Fed. R. Civ. P. 56(c)(2).

[114] Fed. R. Civ. P. 56(c)(4).

[115] *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (citing *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987)).

have"[116] unless "failure to notice and correct it would affect the fairness, integrity, or public reputation or judicial proceedings."[117]

The Federal Rules of Evidence define hearsay as "a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."[118] Pursuant to the Rules of Evidence, hearsay is not admissible in evidence unless it falls into an exception created by federal statute, the Rules themselves, or a rule prescribed by the Supreme Court.[119]

Rule 803(6) identifies "Records of Regularly Conducted Activity" as an exclusion to the general rule prescribing hearsay evidence.[120] Under Rule 803(6), a record of an act, event, or condition is admissible if:

(A)   the record was made at or near the time by—or from information transmitted by—someone with knowledge;
(B)   the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
(C)   making the record was a regular practice of that activity;
(D)   all of these conditions are shown by the testimony of the custodian or another qualified witness, or by a certificate that complies with Rule 902(11) or (12) or with a statute permitting certification; and
(E)   neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

---

[116] *Id.* at 461 (quoting *Whitehead v. Food Max of Mississippi, Inc.*, 163 F.3d 265, 275 (5th Cir. 1998)).

[117] *Whitehead*, 163 F.3d at 275.

[118] Fed. R. Evid. 801(c)(1)-(2).

[119] Fed. R. Evid. 802.

[120] Fed. R. Evid. 803(6).

For the purposes of Rule 803(6), a record is "made" when "an entity takes custody of the record for use in its business."[121] There is no requirement that the record be created by the business having custody of it.[122] As the Fifth Circuit explained in *United States v. Duncan*, instead the Rule 803(6)'s "primary emphasis" is on reliability or trustworthiness of the records.[123] A company's using a record in conducting its business, even if that company did not create the record, is indicative of reliability.[124]

Rule 803(6) requires that "each participant in the chain which created the record—from the initial observer-reporter to the final entrant—must generally be acting in the course of regularly conducted activity."[125] Furthermore, the record must be created by persons with knowledge of the facts recorded.[126]Although the person making the record is not required to have first-hand knowledge, the information must at least have been transmitted by someone with knowledge.[127] If the source of the information reported cannot be identified, then the record does not qualify for the exception.[128]

Materials prepared for litigation purposes are typically inadmissible under Rule 803(6). As the Fifth Circuit has explained, "[a]lthough rule 803(6) does not refer to an exception for business

---

[121] 5 J. Weinstein & M. Berger, *Weinstein's Federal Evidence* § 803.8[2] (J. McLaughlin ed., 2d ed. 2013); *see also Duncan*, 919 F.2d at 986 (explaining that the business having custody of the record does not have to be the business that created the document).

[122] 5 J. Weinstein & M. Berger, *Weinstein's*, *supra* note 121, at § 803.8[2].

[123] *Duncan*, 919 F.2d at 986.

[124] *See id.* at 986-87 (noting that hospitals and insurance companies relied on the records in question in conducting business).

[125] 5 J. Weinstein & M. Berger, *Weinstein's*, *supra* note 121, at § 803.8[2].

[126] *Id.* at § 803.8[4].

[127] *Id.*

[128] *Id.*; *see also United States v. Jackson*, 636 F.3d 687(5th Cir. 2011) (holding that drug ledgers were not admissible under Rule 806(3) where the government's witness could not identify who was the recorder of the legers and could not personally vouch for the credibility of the entries in the legers).

records prepared in anticipation of litigation, the exception amounts to a corollary of rule 803(6)'s requirement that admissible business records result from a 'regularly conducted business activity.'"[129] For example, in *Broadcast Music, Inc. v. Xanthas, Inc.*,[130] the Fifth Circuit deemed that reports were inadmissible where their "primary utility" was for litigation.[131]

### B. Analysis

#### 1. Admissibility of Alleged Hearsay Evidence

Because this Court must only consider evidence that is "competent and admissible" in determining whether SFIC is entitled to judgment as a matter of law, it is first necessary to evaluate the admissibility of the evidence SFIC provides in support of its motion for summary judgment. Martin asserts that four of the exhibits SFIC attaches to its motion constitute improper hearsay: (1) a letter from Donald J. Latuso, The Monson Law Firm, LLC, to Jacquelin Martin, dated April 5, 2013; (2) a letter from Matthew D. Monson, The Monson Law Firm, LLC, to Jacquelin Martin, dated April 16, 2013; (3) a letter from Matthew D. Monson, The Monson Law Firm, LLC, to Jacquelin Martin, dated April 23, 2013; and (4) a letter from Wade Hargrove, Southern Fidelity Insurance Company, to Jacquelin Martin, dated February 26, 2013.[132] SFIC maintains that these documents are admissible as records of regularly conducted activity.[133]

The Court finds that the three letters from the Monson Law Firm are not admissible as business records for the following reasons. The Court acknowledges that SFIC is correct that

---

[129] *Brauninger v. Motes*, 260 F. App'x 634, 637 (5th Cir. 2007).

[130] 855 F.2d 233(5th Cir. 1988).

[131] *Id.* at 238-39.

[132] Rec. Doc. 24-1, at pp. 8-10.

[133] Rec. Doc. 29, at pp. 3-6.

pursuant to Rule 803(6) and the Fifth Circuit's decision in *Duncan*, these letters could theoretically be business records of SFIC even though they were created by another entity, in this case, the Monson Law Firm.[134] However, the requirements of Rule 803(6)(A)-(C) must still be attested to.

Although Hargrove, a claims adjuster for SFIC, attaches these letters to his affidavit, Hargrove makes no statement verifying that the letters were made by someone with knowledge of the recorded events or that the letters were kept in the course of regularly conducted activity.[135] Furthermore, it appears from the face of the April 16, 2013 letter that the author, Monson, did not have personal knowledge of the recorded events. In that letter, he writes: "This will confirm your telephone conversation of yesterday, April 15, 2013, with our office in which you have stated to this office that you will not be participating in the examination under oath. . . ."[136] He does not indicate who at the Monson Law Firm participated in the telephone conversation. Similarly, in the April 23, 2013 letter, Monson writes: "you have informed this office that you do not wish to participate in your examination."[137] Again, Monson does not indicate the specific person or persons who participated in the conversation.

Comparing the facts here to the Fifth Circuit's decision in *United Sates Commodity Futures Trading Commission v. Dizona*[138] further indicates that Hargrove did not properly attest that the requirements of Rule 803(6) were met. In *Dizona*, the Commodity Futures Trading Commission ("CFTC") attempted to have spreadsheets, showing trading data from a energy trading firm,

---

[134] *See* 5 J. Weinstein & M. Berger, *Weinstein's*, *supra* note 121, at § 803.8[2]; *Duncan*, 919 F.2d at 986-87.

[135] *See* Aff. of Anthony Hargrove (July 16, 2013), Rec. Doc. 22-3 at pp. 1-3.

[136] Letter from Matthew D. Monson, The Monson Law Firm, LLC, to Jacquelin Martin (Apr. 16, 2013), Rec. Doc. 22-3 at p. 75.

[137] Letter from Matthew D. Monson, The Monson Law Firm, LLC, to Jacquelin Martin (Apr. 25, 2013), Rec. Doc. 22-3 at pp. 76-77.

[138] 594 F.3d 408 (2010).

admitted in evidence as a business record.[139] The Commission however, only called its investigator as a summary witness. The Court held that the investigator was not a "qualified witness" because she "did not interview any [trading firm] employee or have any knowledge regarding the keeping of the records."[140] Furthermore, she did not know whether the spreadsheets showing trading data were made at or near the time of the trade.[141] In sum, the Fifth Circuit found that "she had no information about how the record was produced."[142] Like the investigator in *Dizona*, Hargrove has failed to attest that he had any knowledge regarding the creation of the letters that SFIC seeks to admit as business records.

Turning to the letter from Hargrove to Martin, this document is also inadmissible as a business record. In his affidavit, Hargrove makes no statement verifying that the letter was kept in the course of regularly conducted activity. Furthermore, the letter contains statements that are not based on Hargrove's personal knowledge. In particular, Hargrove writes that an SFIC "engineer was not allowed to complete his inspection" and that the engineer "has now been told by your contractor, that he is no longer allowed to inspect the property."[143] Hargrove does not purport to have knowledge of these events; rather, his knowledge appears to come from the engineer, who is not identified in the letter. In this manner, Hargrove's affidavit is not sufficient to verify that Rule 803(6)(A)'s requirement that the record be made "by—or from information transmitted by—someone with knowledge" is satisfied.

---

[139] *Id.* at 414-15.

[140] *Id.* at 416.

[141] *Id.*

[142] *Id.*

[143] Letter from Wade Hargrove, SFIC, to Jacquelin Martin (Feb. 26, 2013), Rec. Doc. 22-3 at pp. 78-79.

Finally, all four of the letters appear to have been created in anticipation of litigation. Hargrove's February 23 letter is labeled as a "Reservation of Rights," and specifically references settlement negotiations as well as SFIC's "defending any lawsuit arising out of the above captioned claim."[144] The three other letters are from a law firm representing SFIC and were written after SFIC filed its complaint against Martin, indicating that these documents were created with an eye toward litigation.[145]

In *Palmer v. Hoffman*, the Supreme Court, construing the statutory predecessor of Rule 803(6), specifically warned against the use of law firm records memorializing a litigant's version of the facts as business records:

> The conduct of a business commonly entails the payment of tort claims incurred by the negligence of its employees. But the fact that a company makes a business out of recording its employees' versions of their accidents does not put those statements in the class of records made 'in the regular course' of business within the meaning of the Act. If it did, then any law office in the land could follow the same course, since business as defined in the Act includes the professions.[146]

SFIC cannot have its lawyers develop "records" indicating that Martin failed to submit to an EUO and then have those records serve as evidence in support of a motion for summary judgment.

*2. Whether Martin Breached Her Duties Under the Policy*

In this case, coverage under Martin's policy with SFIC required her to fulfill certain duties, which included producing various documents and submitting to an EUO. Martin's duty to cooperate

---

[144] Letter from Wade Hargrove, SFIC, to Jacquelin Martin (Feb. 26, 2013), Rec. Doc. 22-3 at pp. 78-79.

[145] Letter from Donald J. Latuso, The Monson Law Firm, LLC, to Jacquelin Martin (Apr. 5, 2013), Rec. Doc. 22-3 at p. 74;  Letter from Matthew D. Monson, The Monson Law Firm, LLC, to Jacquelin Martin (Apr. 16, 2013), Rec. Doc. 22-3 at p. 75; Letter from Matthew D. Monson, The Monson Law Firm, LLC, to Jacquelin Martin (Apr. 25, 2013), Rec. Doc. 22-3 at pp. 76-77; *see also See* Aff. of Anthony Hargrove (July 16, 2013), Rec. Doc. 22-3 at pp. 1-3.

[146] *Palmer v. Hoffman*, 318 U.S. 109, 113 (1943).

in the investigation of her claim was a condition precedent to her recovery under the policy, and *LeBlanc* establishes that the failure of an insured to cooperate with the insurer, including the refusal to submit to an EUO, may be a material breach of the contract and a defense to suit on the policy.[147]

As the party moving for summary judgment, SFIC has the burden of showing that "there is no genuine dispute as to any material fact," with respect to whether Martin breached her duty to cooperate and submit to an EUO.[148]   The Court finds that SFIC has not met its burden. In support of its motion for summary judgment, SFIC submitted the Hargrove affidavit, the February 26, 2013 letter from Hargrove to Martin, and four letters from the Monson Law Firm to Martin. But as discussed above, the February 26 letter from Hargrove to Martin, the April 5 letter from Latuso to Martin, the April 16 letter from Monson to Martin, and the  April 25 letter from Monson to Martin are all hearsay and do not fall within Rule 803(6)'s exception for records of regularly conducted activity. Thus, this Court cannot consider this evidence in deciding SFIC's motion for summary judgment.[149]

The remaining evidence in the record is insufficient to establish that there is no genuine dispute as to any material fact. In his affidavit, Hargrove contends that SFIC's engineer was not allowed to complete his initial inspection of Martin's property, that the engineer set two follow up dates, and that the engineer was eventually told by Martin's contractor that he could not inspect the property.[150] He further asserts that "Martin failed to provide the information requested and failed to

---

[147]   *See LeBlanc*, 223 So. 2d at 863-64; *see also Lee*, 607 So. 2d at 688.

[148]   Fed. R. Civ. P. 56(a); *see also Celotex*, 477 U.S. at 322-23; *Little*, 37 F.3d at 1075.

[149]   *See* Fed. R. Civ. P. 56(c)(2); *Bellard*, 675 F.3d at 460

[150]    Aff. of Anthony Hargrove (July 16, 2013), Rec. Doc. 22-3 at pp. 1-3.

give her examination under oath."[151] Martin challenges Hargrove's statements saying that she has allowed at least three inspectors to come to her house. She also avers that "I never told Mr. Latuso, or anyone else, that I would not submit to a statement under oath" and that "I have always been willing to give a statement."[152] Accordingly, whether Martin refused to submit to an EUO is a material fact in dispute precluding summary judgment.

### 3. Whether SFIC Must Demonstrate Prejudice

Because this Court finds that it is disputed whether Martin refused to submit to an EUO, at this time it is not necessary to rule on whether SFIC would have to show that it was prejudiced by Martin's refusal.

Without ruling on the prejudice issue, the Court makes the following observations. Although the Louisiana Supreme Court has not decided whether an insurer must show prejudice, it has explained that an insurance policy is a contract that "constitutes the law of the case" between the insurer and the insured.[153] Here, the insurance policy at issue specifically addresses the prejudice requirement, stating that SFIC has "no duty to provide coverage under this policy if the failure to comply with the following [cooperation] duties *is prejudicial to us*."[154] Thus by the terms of the policy, SFIC is required to show that any failure to cooperate on the part of Martin is prejudicial.

---

[151]   *Id.*

[152]   *Id.*

[153]   *LeBlanc*, 223 So.2d at 863.

[154]   Homeowners Policy issued by SFIC to Jacquelin Martin, Policy No. LVH 100221070017, Rec. Doc. 22-3 at p. 29 (emphasis added).

## V. Conclusion

This Court finds that there is a genuine dispute as to the material fact of whether Martin refused to cooperate and to submit to an EUO. Accordingly, Plaintiff SFIC is not entitled to summary judgment in this matter.

**IT IS HEREBY ORDERED** that the motion for summary judgment[155] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this <u>17th</u> day of December, 2013.

*Nannette Jolivette Brown*

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[155] Rec. Doc. 22-1.

29